**WOODSTREAM CORPORATION,**
**Plaintiff,**

v.

**HERTER'S, INC., and George L. Herter,**
**Defendants.**

**No. 2–67–Civ–297.**

United States District Court,
D. Minnesota,
Second Division.

May 7, 1970.

---

6. This sum is the total number of the shares of stock which were distributed during the period in question.

Robert T. Edell, Merchant & Gould, Minneapolis, Minn., for plaintiff.

H. Dale Palmatier, Williamson, Palmatier & Bains, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

This is a patent infringement and unfair competition case involving animal traps.

Plaintiff, a Pennsylvania corporation, is a long-time manufacturer and seller of animal traps and is the assignee of the patents allegedly infringed. Plaintiff corporation was formerly known as Animal Trap Company of America.

Defendant Herter's, Inc. is a Minnesota corporation, headquartered at Waseca, operates a mail order house and sells animal traps. Defendant George L. Herter is President and principal stockholder of the Herter Corporation.

Jurisdiction is established. 35 U.S.C.A. §§ 281, 283, and 28 U.S.C.A. §§ 1338(a), 1338(b), and 1400(b).

### Infringement and Validity

Plaintiff alleges infringement of two patents, Conibear, 3,010,245, issued November 28, 1961, and Lehn, 2,947,104, issued August 2, 1960. Defendants deny infringement and assert invalidity.

▪ Since an invalid patent cannot be infringed, Kell-dot Industries, Inc. v. Graves, 361 F.2d 25 (8th Cir. 1966), we go first to the issue of validity.

The courtrooms within the province of the Eighth Circuit Court of Appeals do not afford a congenial forum to the holder of a United States patent. A reading of the decided cases clearly reflects this. It is especially true since 1966 following the Supreme Court's expressions in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. I can find no record of the Eighth Circuit Court of Appeals upholding the validity of a patent since *Graham*. It did so sparingly before *Graham*. Recent Eighth Circuit cases are cited in the margin.[1]

1. Kell-dot Industries, Inc. v. Graves, 361 F.2d 25 (1966); American Infra-Red Radiant Co., Inc. v. Lambert Industries, Inc., 360 F.2d 977; Skee-Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895 (1966); Piel Manufacturing Company, Inc. v. George A. Rolfes Co., 363 F.2d 57 (1966); Automated Building Components, Inc. v. Hydro-Air Engineering, Inc., 362 F.2d 989 (1966); L & A Products, Inc. v. Britt Tech Corporation, 365 F.2d 83 (1966); Superior Concrete Accessories,

In order for a structure to be patentable it must have three qualities—utility, novelty and non-obviousness. 35 U.S.C.A. §§ 101, 102 and 103. The 1952 Patent Act added the requirement of non-obviousness as a statutory requirement, although in effect it was required previously by judicial decision. Thus patentability is to depend, in addition to novelty and utility, upon the "non-obvious" nature of the "subject matter sought to be patented" to a person having ordinary skill in the pertinent art. *Graham,* 86 S.Ct. 684, 692.

I am satisfied from reading *Graham* and the recent decisions of the Eighth Circuit Court of Appeals that while the Conibear and Lehn patents here in issue may satisfy the requirements of novelty and utility, the nature of the subject matter sought to be patented was obvious to a person having ordinary skill in the art, and for that reason the patents are invalid.

The illuminating discussion of patent principles by Mr. Justice Clark in the beginning pages of *Graham* concludes with the prophetic observation, reflective of the present state of our patent law, that

"He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office." 86 S.Ct. 684, 695.

The structures in suit are animal traps intended for use in trapping muskrats, beaver, marten and other animals. The Conibear and Lehn patents are, for our purposes and in view of the conclusions reached, substantially the same. Each of the patents reflects a simple structure consisting of a pair of substantially identical rectangular frames hinged to each other wherein the sides of the frames comprise the jaws. The jaws are held in open position by a latch mechanism and when released the jaws swing under influence of the spring to catch the animal. This type of trap is commonly referred to as a "swing frame" type.

The evidence introduced by the plaintiff showed that the Conibear and Lehn type of frame trap has been a substantial improvement over the long spring, coil spring and jump traps which had long been in use by trappers.

An experienced trapper from the Eastern Shore of Maryland, a long-time editor of Fur, Fish and Game magazine, a thirty-year veteran officer of the plaintiff company, and others, contributed testimony from which it appeared that the swing frame trap of the Conibear variety has substantial advantages over the old type of leg trap. The swing frame trap may be set faster, and easier. The trapper may remove animals from it more quickly. Its use occasions less loss to predatory animals. It is more humane than the old leg-type trap in that the Conibear type in most cases immediately kills the animal. With the old leg type the animal many times was only wounded and died a slow death. When the animal's leg was caught in it, he sometimes chewed the skin off and freed himself. Arthur B. Hardy, Editor of Fur, Fish & Game magazine said that the Conibear type trap had "tremendous influence in the trapping industry." The inventor of the trap, Mr. Conibear, received an award from the Humane Society of America because of the humane features of his trap.

Notwithstanding the greater utility, humaneness and commercial success of the Conibear type trap, factors certainly

Inc. v. Richmond Screw Anchor Co., Inc., 369 F.2d 353 (1966); Imperial Stone Cutters, Inc. v. Schwartz, 370 F.2d 425 (1966); Greening Nursery Company v. J & R Tool & Mfg. Co., 376 F.2d 738 (1967); General Mills, Inc. v. Pillsbury Company, 378 F.2d 666 (1967); Gerner v. Moog Industries, Inc., 383 F.2d 56 (1967); National Connector Corporation v. Malco Manufacturing Company, 392 F.2d 766 (1968); University of Illinois Foundation v. Winegard Company, 402 F.2d 125 (1968); Agrashell, Inc. v. Hammons Products Co., 352 F.2d 443 (1969).

entitled to consideration when determining patentability, it appears to the Court that the features which characterize the Conibear and Lehn traps over the prior art are such as would be obvious to a mechanic skilled in the trap field at the time of the patenting of the Conibear and Lehn traps.

Plaintiff, in seeking to prove infringement and validity, sought to show that the Conibear-Lehn type of trap has a unique trigger mechanism wherein a pivotally mounted member is lifted from its hook position by a second "kick-off" releasing member activated by trigger wires engaged by the animal when entering the trap. The plaintiff argues that the combination of this trigger arrangement with frames having round (as distinguished from flat) stock resulted in a new, novel and non-obvious invention not anticipated by the prior art.

In considering the application for the Conibear patent at the Patent Office, the examiner relied on 3 patents, Oleen, 2,459,580; Mau, 2,565,811; and Mau, 2,701,428; and in considering the Lehn patent cited and relied on Ahlenius, 1,210,253; Keepel, 2,228,808; and Mau, 2,701,428. In the Court's view there was other pertinent prior art which should have been examined by the patent examiner, to wit: Ullman, 1,436,833 issued November 28, 1922 and Zahn, 2,202,938 issued June 4, 1940.

The parties have stipulated that Claim 8 of Conibear and Claim 2 of Lehn are controlling and that validity of all claims of each may be determined accordingly. These claims are set out in the margin.[2]

2. Claim 8 of Conibear, No. 3,010,245 provides as follows:

"An animal trap comprising two frames, each frame formed of wire bent to provide opposite side portions constituting the jaws of the trap and opposite end portions joining together the side portions, said two frames being of substantially the same width but one of said frames being slightly shorter and fitting inside the other frame, pivot means joining together the end members of the two frames at their midpoints so that the frames can rotate about a common axis from an open position of the trap in which a first side portion of one frame is closely adjacent and parallel to a first side portion of the other frame to a closed position in which said first side portion of one frame is closely adjacent and parallel to the second side portion of the other frame, two ring members encircling the adjacent end portions of said frames, one on either side of said pivot means, each ring member being adapted to slide freely along said end portions to move said frames from open to closed position, spring means adapted to urge apart the ring members toward said side portions when the trap is being closed, said end portions lying substantially parallel to each other in the open position of the trap and having portions of one frame forming a cross with portions of the other frame at said common axis thereby decreasing the force exerted by said spring on said frames when the trap is in fully open position and trigger means for releaseably maintaining the trap in open position against the action of the spring means, said trigger means comprising a first pivoted trigger member freely rotatable around and slideable along said wire forming a side portion of one of said frames and having a hook adapted to engage the other frame when the trap is in open position and a second pivoted trigger member having a portion positioned to be engaged by an animal entering the trap and a portion engaging said first trigger member adjacent said hook when the trap is in open position to disengage said hook from said other frame upon pivotal movement of said second trigger member and thereby release the trap."

Claim 2 of Lehn, No. 2,947,107 provides as follows:

"A trap comprising two similar frames, each having opposite side portions and connecting end portions, pivot means pivotally connecting the end portions of said frames together intermediate said side portions, spring means for swinging said frames relative to one another about their pivots from a set position in which a first side portion of one frame is adjacent a first side portion of the other frame to a closed position in which said first side portion of each frame is adjacent a second side portion of the other frame, a latch member pivotally carried on one of said frames and having a detent por-

In my view, the Conibear patent, Claim 8, was anticipated by the prior art in both Mau patents and in Ullman, and the Lehn patent, Claim 2, was anticipated by Zahm, Ullman and both Mau patents.

It would be superrogatory to detail all of the facets of the anticipation of Conibear and Lehn by the prior art, but it is sufficient to say that the signal feature of Conibear and Lehn which was urged at trial was the swivel latch mechanism. Plaintiff's expert witness testified that this trigger mechanism and the use of round stock were the non-obvious and significant improvements over Mau and other prior art. Defendants' expert witness testified exactly to the contrary —that neither the trigger mechanism, the use of round instead of flat stock, or any other characteristic of the Conibear-Lehn type of trap were significant or novel or non-obvious over the cited prior art or over Ullman and Zahm. I see no "flash of creative genius" reflected in an animal trap which embodied a swivel, as distinguished from a stationary latch or which consisted of round, rather than flat, frames. Such modifications of an animal trap fall well within the skill of the artisan in the art. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. See *Graham*, 86 S.Ct. 684, 692 and footnote 7. I am satisfied from reading the claims, examining the drawings, and hearing the testimony, that the Conibear and Lehn patents rest upon exceedingly small and quite non-technical differences in a trap which was old in the art. Paraphrasing *Graham*, 86 S.Ct. 684, 703.

### Unfair Competition

■ Plaintiff also asserts a claim for unfair competition. This claim refers to the leg type of coil and long spring trap, the patents to which have long since ex-

pired. Each of such is equipped with a release pedal which trips the trap and releases the surrounding jaws to catch the animal. The release pedal is square or rectangular in certain instances and round in others. The shape of the release pedal is determined partly by functional aspects. Both the plaintiff and the defendants sell this type of trap.

The traps of the plaintiff and defendants appear generally similar except that the plaintiff's trap has the large legend "V" (for Victor) stamped on the release pedal, and the defendants' has the large legend "H" (for Hudson Bay) on it. The name of the seller of each trap is clearly stamped on the release pedal. Plaintiff's are marked "Animal Trap Company." Defendants' are marked "Herter's, Inc." Plaintiff's traps are made in the United States. The defendants' traps are made in Japan. The defendants' traps carry the legend "Made in Japan" on them. Both plaintiff and defendants use a similar numbering system to identify the size of the various traps. The use of such a system of numbering is quite common in the industry. The defendants' traps of this type are illustrated in its catalog and are described by suitable captions and legends to indicate that the traps are those of the defendants.

Although there was evidence that some of plaintiff's informants were of the view, because of the general similarity of appearance, that plaintiff was manufacturing traps for the defendants, there was no proof that defendants were deceiving the public or attempting to do so or palming off their traps for plaintiff's traps. Defendants have not competed unfairly with the plaintiff.

The Court will sign findings of fact and conclusions of law for the defendants. Defendants' counsel will please promptly submit such.

tion engaging said other frame to hold said frames in set position and trigger means comprising a sleeve portion rotatable on a portion of said other frame and having an opening in said sleeve to receive said detent portion of the latch and an arm projecting from said sleeve, said arm providing means for rotating said sleeve to disengage said latch member."