CARTER–WALLACE, INC.

v.

The UNITED STATES.

No. 322–67.

United States Court of Claims.

May 15, 1974.

George B. Finnegan, Jr., New York City, attorney of record, for plaintiff; Jerome G. Lee, John D. Foley, George P. Hoare, Jr., Morgan, Finnegan, Durham & Pine, Edward J. Ross, Louis A. Mangone, Breed, Abbott & Morgan, New York City, Douglas B. Henderson, Finnegan, Henderson, Farabow & Garrett, Washington, D.C., of counsel.

James A. Curley, Washington, D.C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant; A. David Spevack, Washington, D.C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

KASHIWA, Judge.

This is a suit under 28 U.S.C. § 1498 [1] to recover reasonable and entire compen-

1. "§ 1498. Patent and copyright cases
    (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufac-

sation for alleged unauthorized use by the United States of plaintiff's patent. The patent in suit, United States Patent No. 2,724,720, "Dicarbamates of Substituted Propane Diols," owned by plaintiff, covers three chemical compounds. One of these compounds is a drug known as meprobamate, and its unauthorized use by the Government is alleged to infringe claim 4 of the patent in suit.

The petition herein charges infringement of both claims 1 and 4.[2] Claim 4 reads "2-methyl-2-n-propyl-1, 3-propanediol dicarbamate," which is a chemical compound or drug with the generic name "meprobamate." Meprobamate and combination drug products containing meprobamate have been sold by plaintiff and others under various trademarks, including "Miltown" and "Equanil." Defendant is alleged to have infringed claim 4 of said patent by the manufacture by defendant or for defendant and by delivery to and acceptance by defendant and by the use of defendant of said meprobamate, all without license of plaintiff, the owner. Plaintiff filed administrative claims with the following departments and agencies:

Department of Defense

   (a)   Defense Supply Agency

   (b)   Department of Air Force

   (c)   Department of Army

   (d)   Department of Navy

General Accounting Office

Veterans Administration

No action was taken on said administrative claims so plaintiff filed this suit on September 14, 1967. Defendant in its initial answer, filed March 29, 1968, asserted the usual defenses of invalidity and non-infringement. However, on June 11, 1970, defendant was permitted to file its first amended answer which added further defenses based on unenforceability of the patent because of alleged violations by plaintiff of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and "misuse of its patent * * * to secure a monopoly beyond the scope of the patent." Plaintiff filed a motion to strike the new defenses. This court allowed the motion as to certain paragraphs and denied the motion as to others in an opinion rendered October 15, 1971, Carter-Wallace, Inc. v. United States, 449 F.2d 1374, 196 Ct.Cl. 35. The case was remanded to a trial judge for further proceedings consistent with the opinion. Trial before the trial judge started on May 5, 1971.

Just about the time said trial before the trial judge started, the Supreme Court, on May 3, 1971, decided Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (hereinafter "Blonder-Tongue"). Shortly after *Blonder-Tongue*, on February 18, 1972, a case in which plaintiff herein was also plaintiff, Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 341 F.Supp. 1303, was decided by Judge John F. Dooling, Jr., of the United States District Court of the Eastern District of New York (hereinafter "district court"), holding claim 4 of Patent No. 2,724,720, the identical claim and patent involved in this case, invalid. Because of *Blonder-Tongue* and Judge Dooling's said decision of invalidity, defendant on April 13, 1972, filed its second amended answer alleging a further affirmative defense as follows:

> 34. Plaintiff is estopped to assert against defendant that U.S. Patent No. 2,724,720, directed to meprobamate, is valid because that patent was held invalid in other litigation in a

---

ture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture."

2. The reason why plaintiff included claim 1 with claim 4 is that claim 1 covers meproba-

mate as well as two other chemical compounds. Claim 4 covers meprobamate only. The only real issue from the pleadings in this case is the validity of the meprobamate patent. We shall hereafter refer to claim 4, which is representative, as both parties herein have done throughout this case.

federal court to which plaintiff was a party.

35. Plaintiff is estopped to assert against defendant validity of claim 4 of U.S. Patent No. 2,724,720 because that claim has been held invalid by the United States District Court for the Eastern District of New York in an action entitled Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 70 C 369, in a final order dated February 18, 1972.

The Second Circuit, on November 14, 1972, unanimously affirmed the district court's decision. Carter-Wallace, Inc. v. Otte, 474 F.2d 529. A petition for rehearing was filed by plaintiff but rehearing was denied, 474 F.2d 547. Plaintiff sought review by the Supreme Court; certiorari was denied on June 4, 1973, 412 U.S. 929,[3] 93 S.Ct. 2753, 37 L. Ed.2d 156.

Defendant, after filing its second amended answer, filed a motion for summary judgment based on *Blonder-Tongue* and the district court's decision of invalidity. Defendant's motion for summary judgment is allowed for reasons hereafter stated.

In Technograph Printed Circuits, Ltd. v. United States, 484 F.2d 1383, 202 Ct. Cl. 867, decided October 17, 1973, this court, in making its initial application of *Blonder-Tongue*, resulting from a decision of invalidity with relation to certain claims of Patent No. 2,706,697 and other patents relating to manufacture of electric circuit components in Technograph Printed Circuits, Ltd. v. Bendix Aviation Corp., 218 F.Supp. 1 (D.Md. 1963), aff'd per curiam, 327 F.2d 497 (4th Cir. 1964), cert. denied, 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36, held as follows:

We have considered the extensive briefs and written arguments of the parties on the *Blonder-Tongue* question, and the opinions of Judges Watkins and Will and of the Courts of Appeals for the Fourth and Seventh Circuits. We agree fully with the holdings that under *Blonder-Tongue* plaintiffs are estopped by the *Bendix* decision. Plaintiffs make the same arguments before us as were made in the Fourth and Seventh Circuit litigations. There is no need for further briefing or for oral argument, and it would be needless repetition for us to spread out again the persuasive reasons given in the opinions filed in the other courts. On the basis of those opinions, we hold plaintiffs estopped from contesting the invalidity of all the claims of patent '697 which are in issue. It follows that there can be no recovery under patent '697 and the petition with respect thereto is dismissed. [Footnote omitted.] [484 F. 2d at 1384, 202 Ct.Cl. at 869–870.]

Prior to *Blonder-Tongue*, in situations such as that presented herein where plaintiff is shown to have suffered in another court an adverse adjudication of invalidity of the same patent, courts uniformly followed the decision of the Supreme Court in Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), which held:

Neither reason nor authority supports the contention that an adjudication adverse to any or all the claims of a patent precludes another suit upon the same claims against a different defendant. While the earlier decision may by comity be given great weight in a later litigation and thus persuade the court to render a like decree, it is not *res adjudicata* and may not be

3. See Carter-Wallace, Inc. v. Riverton Laboratories, Inc., 304 F.Supp. 357 (S.D.N.Y. 1969), aff'd, 433 F.2d 1034 (2d Cir. 1970), involving the same claim 4 under U.S. Patent No. 2,724,720 as in this case. The court there held the patent for meprobamate valid but the defenses raised in this case and in Davis-Edwards, *supra*, were not raised in Riverton Laboratories. In Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 443 F.2d 867 at 870, 873 (1971), *Riverton Laboratories* is mentioned in an appeal involving a temporary injunction issued by Judge Dooling. The Second Circuit observed that "none of the specific points raised here [*Davis-Edwards*] was there [*Riverton*] presented or considered."

pleaded as a defense. * * * [297 U.S. at 642.]

*Blonder-Tongue* modified *Triplett* as follows:

> * * * it is apparent that the uncritical acceptance of the principle of mutuality of estoppel expressed in *Triplett v. Lowell* is today out of place. *Thus we conclude that Triplett should be overruled to the extent it forecloses a plea of estoppel by one facing a charge of infringement of a patent that has once been declared invalid.* [Emphasis supplied.] [402 U.S. at 350.]

But in modifying *Triplett*, the Supreme Court suggested guidelines to be considered by courts where the defense of estoppel by reason of a prior adjudication of invalidity is raised by one facing a charge of infringement, as follows:

> Moreover, we do not suggest, without legislative guidance, that a plea of estoppel by an infringement or royalty suit defendant must automatically be accepted once the defendant in support of his plea identifies the issue in suit as the identical question finally decided against the patentee or one of his privies in previous litigation. Rather, the patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have a "fair opportunity procedurally, substantively and evidentially to pursue his claim the first time." Eisel v. Columbia Packing Co., 181 F.Supp. 298, 301 (Mass. 1960). This element in the estoppel decision will comprehend, we believe, the important concerns about the complexity of patent litigation and the posited hazard that the prior proceedings were seriously defective.

> Determining whether a patentee has had a full and fair chance to litigate the validity of his patent in an earlier case is of necessity not a simple matter. In addition to the considerations of choice of forum and incentive to litigate mentioned above, certain other factors immediately emerge. For example, if the issue is nonobviousness,

appropriate inquiries would be whether the first validity determination purported to employ the standards announced in Graham v. John Deere Co., *supra*, [383 U.S. 1, 86 S.Ct. 684, 15 L. Ed.2d 545] whether the opinions filed by the District Court and the reviewing court, if any, indicate that the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit; and whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation. But as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity.

> We are not persuaded, therefore, that the *Triplett* rule, as it was formulated, is essential to effectuate the purposes of the patent system or is an indispensable or even an effective safeguard against faulty trials and judgments. Whatever legitimate concern there may be about the intricacies of some patent suits, it is insufficient in and of itself to justify patentees relitigating validity issues as long as new defendants are available. This is especially true if the court in the second litigation must decide in a principled way whether or not it is just and equitable to allow the plea of estoppel in the case before it. [Footnotes omitted.] [402 U.S. at 332–334.]

The guidelines suggested by the Supreme Court require that once the defense of estoppel is raised by the accused infringer, the court must first consider whether the issue of invalidity common to each action is substantially identical and whether in the earlier suit the patentee had had a full and fair opportunity to litigate the issue of invalidity (402 U.S. at 333). This determination of fairness, said the Court, must be based on an examination of the paten-

tee's incentive to litigate the prior action, his choice of forum, his ability to procure crucial evidence and witnesses for that trial, and other factors, for instance, if the issue is non-obviousness, whether the first court adhered to prior guidelines established by the Court in determining patent validity. It is significant that the Court placed the burden on the plaintiff-patentee to show that he did not have a full and fair opportunity to litigate.

As for the identity of issues, the parties herein agree that the issue common to this case and the case in the district court is the validity of the meprobamate claim 4 of the Berger and Ludwig patent No. 2,724,720. The district court held "that claim 4 of the Berger and Ludwig patent, No. 2,724,720 is invalid, * * *." 341 F.Supp. at 1340.

On the question of whether plaintiff had a full and fair opportunity to litigate the issue in the district court, plaintiff makes several claims that it was not given a full and fair opportunity to litigate. It first claims that the district court should not have permitted Davis-Edwards, defendant in the district court, to use the record[4] of the Court of Claims case. With relation to this claim, we observe that plaintiff did not take proper objections in the district court. The following is what occurred in the district court:

> 7. Carter-Wallace's only objection on hearsay grounds to the introduction of testimony from the Court of Claims record came at the beginning of the trial, when defendant moved the court to accept the entire record of the Court of Claims action. This objection was *sustained* by the court so as to allow the plaintiff to present its case as it wished. The court ruled, however, that the defendant could renew its motion when it was time to present its case, at which time the plaintiff might "feel differently

* * * [and] not even oppose your motion to put in some parts or all of the Court of Claims record as your defense." Carter-Wallace's only other objection during the course of the trial came when Davis-Edwards sought to introduce the Government's cross-examination of Carter's first witness. This objection was limited to the alleged immateriality of much of this cross-examination and the delay and confusion that its admission would produce. No objection on hearsay grounds to the use of the cross-examination was made; in any event, as we have held above, any such objection would not have been meritorious. Most important, Carter-Wallace did not object at all, despite many opportunities to do so, at the critical point when Davis-Edwards introduced the testimony of the Government's witnesses in the Court of Claims as its defense. [474 F.2d at 535, n.7.]

Although the above is a footnote in Chief Judge Friendly's opinion, we quote it fully because plaintiff cannot now claim that it was not proper to use the records of this court when it did not properly object to the use of the record of this court by the district court. Aside from the plaintiff's failure to make proper objections, the Second Circuit did not accept plaintiff's claim that it was prejudiced by the use of the Court of Claims' record; it ruled as follows:

> * * * We see no possible impropriety in the admission of the exhibits [from the Court of Claims], mostly prior art references and other records whose authenticity is not challenged. Admission of each exhibit was separately considered by Judge Dooling, with full opportunity for Carter-Wallace to object, and Carter-Wallace has not pointed to any specific ruling which it claims to be erroneous. We likewise find little difficulty in the use of the Government's cross-exami-

4. The record of this court in this case consists of 17 volumes of transcribed testimony, taken before a then trial judge of this court, starting May 5, 1971, and ending June 25, 1971, together with voluminous exhibits which were also identified and filed.

nation in the Court of Claims. Nothing would have prevented counsel for Davis-Edwards from reading the questions the Government had asked and, if the witness gave a different answer, reading into the record as impeachment the response he had previously made in the Court of Claims. Nor can Carter-Wallace object to admission of the cross-examination as substantive evidence rather than impeachment, for Judge Dooling carefully offered it the opportunity to withdraw or modify any of the answers previously given. Moreover, we fail to see how allowing use of the previous cross-examination of its own witnesses could possibly have prejudiced Carter-Wallace. Knowledge that one's witnesses would be asked only the same questions as on a previous trial would seem to be a trial lawyer's dream; indeed, Carter-Wallace freely admitted that its witnesses had modified their direct testimony so as to "clarify" problems explored by the Government's cross-examination. [474 F.2d at 535.]

\* \* \* \* \* \*

Most important, however, Carter-Wallace has failed to show that it has been prejudiced by the use of the Court of Claims testimony. Carter-Wallace knew from the beginning of the trial that Davis-Edwards would rely on the previous testimony and had the rare opportunity to tailor its case to the defense that would be presented. \* \* \* [474 F.2d at 537.]

Chief Judge Friendly's opinion so fully discusses the use of the record of the Court of Claims (474 F.2d at 534–538) that, as we said in Technograph Printed Circuits, Ltd. v. United States, *supra*, "it would be needless repetition for us to spread out again the persuasive reasons given in the opinions filed in the other courts." \* \* \* [484 F.2d at 1384, 202 Ct.Cl. at 870.]

■ With relation to plaintiff's choice of forum and incentive to litigate the issue in the district court, an at-tempt has been made by plaintiff to blame the government for its alleged reluctance to move more rapidly in this case in this court. Plaintiff has tried to create an impression that it was reluctant to try the case in the district court, but the Second Circuit aptly described the situation as follows:

\* \* \* Carter-Wallace has long been aware of Davis-Edwards' weak financial condition; indeed, when the case was last here, it was Carter-Wallace that argued that the defendant's insolvency justified the preliminary injunction it had been awarded. See 443 F.2d at 874. Yet it was Carter-Wallace that chose to pursue this impecunious infringer in the last years of the patent, to push ahead with the trial on the merits against an insolvent defendant, and to take up many days of judicial time with a prosecution which, even on the facts then known, could not of itself have warranted the large expense. [474 F.2d at 534.]

We agree with the Second Circuit that plaintiff cannot now be heard to blame anyone but itself for the choice of forum and incentive to litigate in the district court against a weakened Davis-Edwards on the brink of bankrutpcy. The Second Circuit well stated plaintiff's "discomfiture" as follows:

\* \* \* Carter-Wallace's discomfiture is largely of its own making, arising from its determination to press its claim for infringement against this insolvent infringer, with little prospect of any monetary gain, despite the red flags raised in our previous opinion, rather than await the decision of the Court of Claims. [474 F.2d at 538.]

With relation to the two other issues covered by the district court and the Second Circuit relating to the adequacy of disclosure of the tranquilizing property in the patent application (and CIP application) and the obviousness of the invention under 35 U.S.C. § 103, the Second Circuit decided against plaintiff on each issue. The Second Circuit had

before it an extensive record and the opinion of the district court, lengthy briefs from the parties, and an amicus curiae brief from the American Patent Law Association. The opinion of the Second Circuit was based on an extensive record and demonstrates a complete and thorough consideration of plaintiff's case and of the chemistry and pharmacology underlying the invention and the prior art. 474 F.2d at 538–549. The opinions by Judge Dooling of the district court and Chief Judge Friendly of the Second Circuit are so well written and show such a complete consideration of the chemistry and pharmacology involved that they obviously cannot be "one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit; * * *." *Blonder-Tongue, supra*, 402 U.S. at 333. Upon remand of *Blonder-Tongue*, the District Court of the Northern District of Illinois, Eastern Division, in University of Illinois Foundation v. Blonder-Tongue Laboratories, Inc., 334 F.Supp. 47 (1971), aff'd, 465 F.2d 380 (7th Cir.1972), cert. denied, 409 U.S. 1061, 93 S.Ct. 559, 34 L. Ed.2d 513, interpreted the said *Blonder-Tongue* language, "wholly failed to grasp the technical subject matter," as follows:

> Plaintiff asserts that the courts of the Eighth Circuit "wholly failed to grasp the technical subject matter" since they disagreed with the courts of this Circuit. It would demand arrogance so to conclude. In opening the defense of estoppel from third-party litigation, the Supreme Court sought to eliminate the expense, waste, and confusion caused by repetitive litigation of the validity of the same patent. This goal cannot be achieved if mere disagreement in the second court supervenes the defense. It follows that the second court must defer unless it appears from the face of the prior opinions that the first court completely missed the point. No such conclusion is warranted here. While the technical subject matter in-

volved in the litigation is complex, the Eighth Circuit opinion reveals a conscientious effort to apply the standards laid down in Graham v. John Deere Co., *supra*, [383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545], and a careful evaluation of the issues. That court concluded that the patent was obvious and invalid as a mere combination of known elements. This Court had reached a different conclusion on the same issue, and this Court's opinion was before the Eighth Circuit. A mere difference in the conclusions reached in the application of a general standard such as obviousness under Section 103 of Title 35, United States Code, does not demonstrate that either court "wholly failed to grasp the technical subject matter." As anticipated by the Supreme Court, instances warranting such a conclusion will be rare. 402 U.S. 333, 91 S.Ct. 1434. [334 F. Supp. at 50.]

■ Therefore, with relation to plaintiff's objections relating to the adequacy of disclosure of the tranquilizing property in the patent application (and CIP application) and the obviousness of the invention under 35 U.S.C. § 103 as they were dealt with in the district court and the Second Circuit, plaintiff has failed to make the requisite showing to escape the defense of estoppel and to entitle it to the benefit of relitigation of these questions.

The evidence proffered by plaintiff to supplement the record in this court relates to the issue of whether the patent application failed to disclose the tranquilizing property of meprobamate. The evidence consists of an affidavit from a pharmacologist retained by plaintiff and a number of prior art publications, all of which are dated before November, 1955. Several of the publications were in evidence before the district court and the Second Circuit. The remaining publications are of the same type, are indistinguishable from the prior art of record, and are cumulative evidence. Plaintiff did not make an offer of proof of this evidence to the district court. The prof-

fered evidence was available to plaintiff at the time of the trial before the district court. It cannot qualify as newly discovered evidence. As for the affidavit of Dr. Joseph Seifter, the pharmacologist, the Second Circuit in its decision denying rehearing stated with relation to the necessity of expert testimony under the circumstances of the case before it as follows:

Carter-Wallace has petitioned this court for reconsideration of our decision of November 14, 1972, p. 529, holding its patent on the drug meprobamate to be invalid. It argued that our ruling that the patent application failed to disclose meprobamate's tranquilizing properties, and therefore that those properties could not be considered in assessing the validity of the patent, at 540–543, was a finding of fact on an issue which the district court, because of its differing view of the applicable law, had not considered and on which no expert testimony had been presented. It asked that the case be remanded· to the district court to take further evidence and make findings on what it contends to be this newly determinative issue. We called upon appellee to answer. After careful consideration, we find no infirmity in our decision.

The adequacy of a patent application's disclosure is a mixed question of law and fact, on which the court must ultimately apply a legal standard to a complex set of facts. There can be no doubt that expert testimony will often aid in understanding the underlying factual context. But the resolution of the legal issue is for the court, Minnesota Mining & Mfg. Co. v. Carborundum Co., 155 F.2d 746, 749 (3 Cir. 1946); Watson v. Bersworth, 102 U.S.App.D.C. 187, 251 F.2d 898, 900, cert. denied, 356 U.S. 972, 78 S.Ct. 1135, 2 L.Ed.2d 1146 (1958), and when it is clear that the disclosure of the patent application does not meet the statutory standard, expert assistance is not necessary either in the district court or on review. *Cf.* Kohn v. Eimer, 265 F. 900, 902 (2 Cir.1920).

That is the case here. This issue was fully briefed by both parties and we had the benefit of Judge Dooling's exhaustive findings of fact, 341 F. Supp. 1303, based in large part on expert testimony concerning the relevant chemical concepts, in reaching our decision. We saw then, and we see now, no need for a remand. * * * [474 F.2d at 547.]

Plaintiff argues that the Second Circuit erred in so holding. Our sole question is whether plaintiff had a full and fair opportunity to litigate its patent in the district court and the Second Circuit, not whether this court is necessarily in agreement with the ruling of the Second Circuit. *Blonder-Tongue, supra;* Blumcraft of Pittsburgh v. Kawneer Co., 482 F.2d 542 (5th Cir.1973).

■ We hold that plaintiff-patentee has not shown that it did not have a full and fair opportunity to litigate the validity of its patent before the district court and the Second Circuit in *Davis-Edwards, supra*. The judgment of invalidity entered therein "that claim 4 of the Berger and Ludwig patent No. 2,724,720 is invalid" estopped plaintiff from further maintaining this suit in this court. *University of Illinois Foundation, supra*; Blumcraft of Pittsburgh v. Architectural Art Mfg., Inc., 337 F. Supp. 853 (D.Kansas 1972), aff'd, 459 F.2d 482 (10th Cir.); Sampson v. Ampex Corp., 478 F.2d 339 (2d Cir.1973); Monsanto Co. v. Dawson Chemical Co., 443 F.2d 1035 (5th Cir.1971), cert denied, 405 U.S. 974, 92 S.Ct. 1191, 37 L. Ed.2d 248 (1972); Technograph Printed Circuits, Ltd. v. Martin-Marietta Corp., 340 F.Supp. 423 (D.Md.1972), aff'd 474 F.2d 798 (4th Cir.1973); Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 174 U.S.P.Q. 297 (N.D.Ill. 1972), aff'd, 484 F.2d 905 (7th Cir. 1973); Wahl v. Vibranetics, Inc., 474 F.2d 971 (6th Cir.1973); Bourns, Inc. v. Allen-Bradley Co., 348 F.Supp. 554 (N.D. Ill.1972), aff'd in part, rev'd in part, 480

F.2d 123 (7th Cir.1973); Blumcraft of Pittsburgh v. Kawneer Co., *supra.*

Defendant's motion for summary judgment is allowed, plaintiff's motion to take discovery depositions is denied, and plaintiff's entire petition is dismissed.