**TINNERMAN PRODUCTS, INC.,**
Plaintiff-Appellant,

v.

**GEORGE K. GARRETT COMPANY, Inc.,**
Defendant-Appellee.

No. 13415.

United States Court of Appeals
Third Circuit.

Argued April 6, 1961.

Decided June 13, 1961.

Albert R. Teare, Cleveland, Ohio (Teare, Fetzer & Teare, Cleveland, Ohio, Woodcock, Phelan & Washburn, Philadelphia, Pa., on the brief), for appellant.

Leonard L. Kalish, Philadelphia, Pa., for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Plaintiff, Tinnerman Products, Inc., instituted this action against defendant, George K. Garrett Company, Inc., alleging infringement of three United States patents, Nos. 2,221,498, 2,581,481 and 2,233,230 owned by plaintiff. Defendant's answer urged the invalidity of all the patents because of want of invention and alternatively that even if the patents were valid, they were unenforceable because of plaintiff's misuse of them. The district court found the first two patents (Nos. 2,221,498 and 2,581,481) invalid and plaintiff has not appealed that decision. As to the third (No. 2,233,230) although finding the patent valid, the district court denied enforcement because of plaintiff's misuse of it, relying upon our holding in Newburgh Moire Company v. Superior Moire Company, 3 Cir., 1956, 237 F.2d 283. Plaintiff has appealed from that holding.

In its brief Tinnerman limited its argument to the holding on misuse. However, defendant's brief, in addition to answering plaintiff's argument with regard to misuse, asserted that the judgment of the district court should be affirmed because the patent is invalid and because of other alleged misuses of it by plaintiff. On reply brief, plaintiff vigorously disputes defendant's right to urge these alternative grounds to support the lower court's holding.

The order from which Tinnerman appeals states:

"Order.

"And Now, To Wit: June 27, 1960, judgment will be entered in favor of defendant and against plaintiff. The findings of fact and conclusions of law stated in the foregoing opinion constitute the court's findings of fact and conclusions of law."

On its face, the judgment is not restricted to the holding on misuse of the patent but is a general judgment in favor of the defendant. And the law is clear that where there is an appeal, the responding party may assert any matter in the record to support the judgment. As was stated by this court in Lanova Corporation v. National Supply Co., 3 Cir., 1940, 116 F.2d 235, at pages 238–239:

"In the case at bar, the defendant could not have appealed from the decree given in its favor. Electrical Fittings Corporation v. Thomas &

Betts Co., 307 U.S. 241, 242, 59 S.Ct. 860, 83 L.Ed. 1263; Lindheimer v. Illinois Bell Tel. Co., 292 U.S. 151, 176, 54 S.Ct. 658, 78 L.Ed. 1182. An appellee without a cross-appeal may urge upon the court any matter in the record in support of a decree in its favor even though such an argument may attack the reasoning of the trial court or insist upon the weight of evidence ignored by that court. Here the appellee does not attack the decree. It merely reasserts reasons which it urged below. See United States v. American Ry. Exp. Co., 265 U.S. 425, 435, 436, 44 S.Ct. 560, 68 L.Ed. 1087. The reasoning of the District Court is not binding upon us. We may support the decree upon grounds which the court below rejected."

Plaintiff in its brief states: "Counter-Question No. 1 is improper because it reasserts the issue of invalidity of the patent. Defendant did not appeal the adverse holding of infringement. It may not now reassert the defense of invalidity thereto." But the record belies such an assertion. The only dispositive order entered was the one above quoted in favor of the defendant from which the defendant could not have appealed. Therefore we hold that it is proper for us to examine any and all the grounds urged by the defendant to support the district court's judgment.

Plaintiff is engaged in the manufacture of thread-engaging devices and self-retaining fasteners. The history of the various related patents which have been issued to it, dates back to 1923. The original invention was a new kind of nut, consisting of a small rectangular piece of sheet metal with a square or diamond-shaped hole punched out of the center. Two cuts are made parallel to the long dimension of the piece. These are shorter than its length and intersect with the two corners of the hole closest to the sides of the piece. This inner piece is raised in an arch to create two V-shaped notches which will engage the thread of a bolt. The basic virtue of the device is that it can hold panels under spring tension; allows movement without cracking; and eliminates the need for lock washers.

Although there were subsequent patents developing improvement upon this basic idea, the next of Tinnerman's patents relevant here is the "U" type speed nut. This is composed of a larger piece of sheet metal, which has the thread-engaging hole at one end of the piece. The sheet is doubled so that the two ends are opposite. Then on the lower leg beneath the thread-engaging hole in the upper leg, a circular hole with a raised edge is cut. The principal advantage of this type of nut is its use when the bolt holes are near the edges of the panels to be joined. With the U-nut, it is not necessary to have access to the other side of the panel to hold it in place. Additionally, since the circular hole on the bottom leg of the U-nut is raised, it can snap into place and will facilitate moving the panels during the manufacturing process prior to the placing of the bolt.

The patent in suit is an improvement on the U-nut. It is almost identical with the U-nut, except for the fact that the lower leg is only one-half as long. Therefore, instead of a circular hole with a raised edge on the bottom leg, the hole is semi-circular with a raised edge. Since from a side view the nut resembles the letter J, it is known as the "J" nut.

The sole basis upon which the district court sustained the validity of the J-nut patent was the facility with which it could be applied, because it could be "rocked." Said the court:

"The shortening of the leg had one effect, however, which in my opinion was surprising and unexpected, and which would not have been foreseen by one skilled in the art. That effect was that application of the nut to the panel was greatly facilitated (and at the same time there was less likelihood of marring the surface of the panel) because the nut could be rocked on to the panel from an angle, rather than having to be held almost parallel to the panel. In this I find invention."

The difficulty with this basis for patentability (even assuming it to be an advantage over the prior art) is that nowhere in the specifications, claims, or file wrapper of the patent, is this advantage either disclosed or claimed. The applicable law is clear that where the particular feature relied upon is nowhere mentioned as an advantage, it cannot form the basis of patentability. See e. g., In re Berliner, 1952, 195 F.2d 918, 920, 39 CCPA 928; In re Wright, 1958, 256 F.2d 583, 589, 45 CCPA 1005; In re Stewart, 1955, 222 F.2d 747, 754, 42 CCPA 937; In re Henschell, 1937, 90 F.2d 357, 359, 24 CCPA 1287. As was stated in the Berliner case, supra, 195 F.2d at page 920:

" * * * the right of an applicant to a patent depends not only on what his disclosure shows but also what he claims. The particular feature or fact upon which an applicant predicates patentability must not only be disclosed in the specification but also brought out in the claims."

An examination of the file wrapper for the J-nut patent, shows that the primary basis upon which the patent was issued was its feature of "hole visibility." In commenting upon this in the remarks accompanying the amended claims, plaintiff stated: " * * * it was particularly brought to attention, that in the instant form of fastening device *the clamping arm was of relatively short length wherefore the bolt opening was visible at all times during the application of the fastening device * * *"*; " * * * the shorter arm terminating substantially below the bolt engaging means carried by the longer arm, *thereby providing for the desired visibility of the bolt opening in the application of the fastening device* to attached position with the greatest speed and facility * * *"*; " * * * by constructing the devices in accordance with the present invention, *the bolt opening is visible at all times* and the devices are thereby easily and quickly applied by a simple direct push to seat the centering or locking means 25 thereof in the bolt opening in the applied fastening position of the device." (Emphasis supplied.)

As to this, the district court held [185 F.Supp. 156]:

"Defendant here contends that the J-nut patent is invalid because it involves nothing more than the cutting off of half of the lower leg of the U-nut, the obvious and foreseeable effect of which is to render the bolt hole in the panel more visible and to lessen the amount of material required to make the nut. These two effects are clearly to be expected from shortening one leg of a U-nut."

We agree with the district court's conclusion. The greater "hole-visibility" if the lower leg of the U-nut is shortened was a foreseeable result and not inventive. This would be readily apparent to a mechanic skilled in the art. Alco Kar Kurb, Inc. v. Ager et al., 3 Cir., 1961, 286 F.2d 931.

It follows that plaintiff's patent is invalid. In that situation it becomes unnecessary for us to consider the issue of misuse.

The judgment of the district court will be affirmed.