PACIFIC INTERNATIONAL PLASTICS,
and Violet Davidson, Plaintiffs,

v.

STERLING PLASTICS CORPORATION,
and Sterling Products Co., Inc.,
Defendants.

No. 67–1352.

United States District Court
C. D. California.

Sept. 16, 1969.

Fulwider, Patton, Rieber, Lee & Utecht, Francis A. Utecht, Long Beach, Cal., for plaintiffs.

Mahoney & Hornbaker, Thomas P. Mahoney, Robert D. Hornbaker, Santa Monica, Cal., and Stryker & Jacobson, Marvin Jacobson, St. Paul, Minn., for defendants.

## MEMORANDUM OF DECISION AND ORDER GRANTING SUMMARY JUDGMENT IN BEHALF OF DEFENDANTS

WHELAN, District Judge.

Defendants have moved for summary judgment in this action for patent infringement. The Court has already announced its decision granting such motion.

This Court has jurisdiction of the action under Title 28, United States Code, Section 1338(a).

Plaintiff Pacific International Plastics is the sole licensee of Davidson U. S. Patent No. 3,245,719 entitled "Head Rest" which is now owned by plaintiff Violet Davidson, widow of the inventor under such patent, Louis H. Davidson. The said patent in brief describes a foam cylindrical head rest supported by angular brackets; the cylinder has a casing the seams of which are heat sealed.

Plaintiff Davidson is also the owner of process Patent No. 3,346,934 which claims methods for the manufacture of head rests. This latter patent is not involved in this action.

The grounds urged by defendants for summary judgment are three: (1) that the patent is invalid for the reason that the alleged invention was in public use and on sale in this country more than one year prior to the date of the application for patent made by Davidson (the date of the application for patent was August 13, 1964); (2) that the

subject matter of the patent in suit would have been obvious to a person having ordinary skill in the pertinent art who was at that time aware of such matters as were in the public domain, and (3) that the alleged invention was known or used by others in this country before the invention by Davidson.

■■ The Court will grant summary judgment on the ground of obviousness; and in so doing the Court has determined that such obviousness appears from undisputed facts. The Court in arriving at such judgment determines that there are no material facts subject to genuine dispute. A summary judgment invariably rests upon a factual foundation and is inappropriate only when a material fact is subject to genuine dispute. Where material facts are not disputed, obviousness is a question of law. Walker v. General Motors Corporation, 362 F.2d 56, 59 (9th Cir. 1966).

■ The undisputed facts before the Court establish that one Colgan, prior to August 13, 1963, i. e., more than one year prior to the filing of the application for the patent in suit, manufactured and sold a head rest containing all of the elements claimed in the patent in suit except the longitudinal, uninterrupted heat-sealed seam in the sleeve and a heat-seal at the peripheral edges of the casing covering the cylinder. In place of the heat-seal the Colgan head rest had sewn and zipper closings. It is further established by the undisputed facts that heat-sealing and heat-sealing materials were publicly known and used to seam together the edges of materials such as heat-sealable plastic materials for covers in the pillow and cushion art, which art is pertinent to the product of the patent in suit, for at least ten years prior to August 13, 1963.

Thus it appears that the patent in suit merely substituted a theretofore known and used heat-sealable material for the prior art material used in head rests, and utilized theretofore known and used heat-sealed seams in place of sewn and zipper seams.

The head rest in public use and on sale prior to August 13, 1963, contained those elements in Table One which hereinafter follows other than those elements which are set forth in brackets in such Table One; the patent in suit includes in Claim 1 those items set forth in Table One other than the items which are italicized. In summary, Claim 1 of the patent in suit includes everything in Table One except the italicized portions while the theretofore publicly used and sold head rest includes everything in Table One other than the bracketed items.

### TABLE ONE

(a) a foam cylinder,

(b) a longitudinal slot in said cylinder,

(c) a bracket plate in said slot,

(d) angular brackets connected to said bracket plate and extending from said cylinder,

(e) a casing for cylinder, said casing enclosing said cylinder and said bracket plate,

(f) said casing comprising a sleeve,

(g) a longitudinal uninterrupted [heat seal] *zipper* in said sleeve,

(h) slots in said sleeve,

(i) said slots being longitudinally spaced and aligned and circumferentially spaced from said [heat-sealed] *zippered* seam,

(j) said brackets extending through said slots,

(k) said bracket plate extending from one of said angular brackets to the other of said angular brackets,

(l) a pair of end covers for said sleeve and said cylinder,

(m) a [heat seal] *sewn seam* at the peripheral edges of said covers extending circumambiently about the ends of said sleeve, and

(n) said cylinder fitting snugly in said casing.

The head rest in public use and on sale prior to August 13, 1963, contained those elements in Table Two which hereinafter follows other than those elements which are set forth in brackets in such Table Two; the patent in suit includes in Claim 2 those items set forth in Table Two other than the items which are italicized. In summary, Claim 2 of the patent in suit includes everything in Table Two except the italicized portions while the theretofore publicly used and sold head rest includes everything in Table Two other than the bracketed items.

## TABLE TWO

(a) a foam cylinder,

(b) a longitudinal slot in said cylinder, said slot extending from end to end of said cylinder,

(c) a bracket plate in said slot,

(d) spaced angular brackets connected to said bracket plate and extending from said cylinder,

(e) said bracket plate extending from one of said angular brackets to the other of said angular brackets,

(f) a casing for said cylinder, said casing comprising a sleeve, said sleeve extending around said cylinder and said bracket plate,

(g) a longitudinal uninterrupted [heat seal] *zipper* seam in said sleeve,

(h) slots in said sleeve,

(i) said slots being longitudinally spaced and aligned and circumferentially spaced from said [heat-sealed] *zippered* seam,

(j) brackets extending through said slots,

(k) a pair of end covers,

(l) a [heat seal] *sewn seam* at the peripheral edges of said covers and at the ends of said sleeve, said [heat seal] *sewn seam* extending circumambiently about the edges of said sleeve and said covers.

The head rest in public use and on sale prior to August 13, 1963, contained those elements in Table Three which hereinafter follows other than those elements which are set forth in brackets in such Table Three; the patent in suit includes in Claim 3 those items set forth in Table Three other than the items which are italicized. In summary, Claim 3 of the patent in suit includes everything in Table Three except the italicized portions while the theretofore publicly used and sold head rest includes everything in Table Three other than the bracketed items.

## TABLE THREE

(a) a foam cylinder,

(b) a longitudinal slot in said cylinder,

(c) a bracket plate in said slot, said bracket plate having guard beads at the opposite longitudinal edges of said plate,

(d) angular brackets connected to said bracket plate and extending from said cylinder,

(e) said bracket plate extending from one of said angular brackets to the other of said angular brackets,

(f) a casing for said cylinder, said casing comprising a sleeve, said sleeve extending around said cylinder and bracket plate,

(g) a longitudinal [heat seal] *zipper* seam in said sleeve,

(h) spaced slots in said sleeve,

(i) brackets extending through said slots,

(j) a pair of end covers,

(k) a [heat seal] *sewn seam* at the peripheral edges of said covers and at the ends of said sleeve, extending circumambiently about said sleeve ends and said edges of said covers,

(l) said cylinder fitting snugly in said casing.

The head rest in public use and on sale prior to August 13, 1963, contained those elements in Table Four which hereinafter follows other than those ele-

ments which are set forth in brackets in such Table Four; the patent in suit includes in Claim 4 those items set forth in Table Four other than the items which are italicized. In summary, Claim 4 of the patent in suit includes everything in Table Four except the italicized portions while the theretofore publicly used and sold head rest includes everything in Table Four other than the bracketed items.

### TABLE FOUR

(a) a foam cylinder,

(b) a longitudinal slot in said cylinder, said slot extending from end to end of said cylinder,

(c) a bracket plate in said slot, said bracket plate having edge beads on the opposite longitudinal edges of said plate,

(d) spaced angular brackets connected to said bracket plate and extending from said cylinder,

(e) said bracket plate extending from one of said angular brackets to the other of said angular brackets,

(f) a casing for said cylinder,

(g) said casing comprising a sleeve,

(h) said sleeve extending around said cylinder and bracket plate,

(i) a longitudinal [heat seal] *zipper* seam in said sleeve,

(j) spaced slots in said sleeve,

(k) brackets extending through said slots,

(*l*) a pair of end covers,

(m) a [heat seal] *sewn seam* at the peripheral edges of said covers and the ends of said sleeve, said [seal] *seam* extending circumambiently about said ends of said sleeve and said peripheral edges.

The advances being obvious, the affidavit filed by plaintiffs concerning the success of the production of the patent in suit could not affect the result. Alladin Plastics, Inc. v. Jerrald Stephan Co., 362 F.2d 532, 534 (9th Cir. 1966), citing Walker v. General Motors Corporation, 362 F.2d 56 (9th Cir. 1966). The unusual and surprising results claimed by plaintiffs are nowhere mentioned in the specifications, claims or file-wrapper of the patent in suit, and therefore cannot form the basis of patentability. Tinnerman Products, Inc. v. George K. Garrett Co., 292 F.2d 137 (3rd Cir. 1961).

Here Davidson merely substituted an old heat sealable material for the prior art material and old heat sealing and heat seals for the sewn seam and zipper; such substitutions were suggested by prior art cushions and equipment. The combinations of the old elements defined in the claims of the patent in suit did not produce any unusual or surprising consequences; and the old elements did not perform any additional or different function in the combination than they performed out of it.

The surprising results contended by plaintiffs for the production of the patent in suit, even were such results more striking than in any previous utilization of the elements of the product, do not mitigate against a holding of invalidity of the patent in suit. These facts do not indicate that the combination is non-obvious in the statutory sense; scores of progressive ideas in business are not patentable. Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Company, 375 F.2d 85 (9th Cir. 1967).

The differences between the subject matter of each of the claims of Davidson U.S. Letters Patent No. 3,245,719 and the head rest in public use and on sale prior to August 13, 1963, are such that the subject matter as a whole would have been obvious prior to August 13, 1963, to a person having ordinary skill in the art to which said subject matter pertains.

As stated before, we are not here concerned with the question of validity of plaintiffs' process patent for the construction of head rests. The validity of that patent and the validity of the

patent in suit are not interdependent. Davidson U.S. Letters Patent No. 3,245,-719 is invalid.

 Where, as here, invention is so clearly lacking as to invalidate the patent, issues of infringement become moot. Bliss v. Gotham Industries, Inc., 316 F.2d 848 (9th Cir. 1963).

The foregoing constitutes the pertinent undisputed facts and the conclusions of law of this Court upon such facts. As stated, there are no genuine issues of fact in dispute.

No judgment shall be entered until the Court has signed a formal judgment.