**WESTWOOD CHEMICAL, INC. and
Eastwood Chemical, Inc.**

v.

**The UNITED STATES.**

No. 473–69.

United States Court of Claims.

Oct. 22, 1975.

T. A. TeGrotenhuis, Cleveland, Ohio, attorney of record, for plaintiffs; Marshall I. Nurenberg, Cleveland, Ohio, of counsel.

Thomas J. Byrnes, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, for defendant.

Before COWEN, Chief Judge, and NICHOLS and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PER CURIAM.

This case comes before the court on defendant's motion, filed August 22, 1975, requesting that the court adopt the recommended decision of Trial Judge Hal D. Cooper, filed June 19, 1975, pursuant to Rules 54 and 55, as the basis for its judgment in this case since plaintiff has filed no request for review by the court within the time set by the Rules therefor and such time has expired. Upon consideration thereof, without oral argument, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby affirms and adopts the recommended decision as the basis for its judgment in this case. Therefore, defendant's motion of August 22, 1975, is granted, the court concludes that plaintiffs are not entitled to recover and their petition is dismissed.

## OPINION OF TRIAL JUDGE

COOPER, Trial Judge: For the second time in this case,[1] defendant seeks application of the collateral estoppel of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), this

---

1. As discussed, *infra*, defendant's first motion for partial summary judgment was granted as to some of the claims, on the basis of collateral estoppel, on March 12, 1973.

time to foreclose any recovery by plaintiffs on any of the remaining claims in the two patents in suit. In so doing, defendant relies on the prior decisions in *Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.,* 317 F.Supp. 201 (N.D.Ohio 1970), *modified and aff'd,* 445 F.2d 911 (6th Cir. 1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972); *Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.,* 380 F.Supp. 517 (N.D.Ohio 1973), *aff'd,* 498 F.2d 1115 (6th Cir. 1974); and *PPG Industries, Inc. v. Westwood Chemical, Inc.,* Civil Action No. C–71–49 (N.D.Ohio, Mar. 17, 1975) (unreported).[2]

After conducting a hearing and extended consideration of the questions presented, it has been concluded that the collateral estoppel doctrine, as set out in *Blonder-Tongue,* does apply to the claims here in issue, particularly in light of the *Owens-Corning* decision, and that defendant is entitled to a judgment in its favor.

## I.

United States Letters Patent No. 2,742,378 (hereafter the '378 patent), entitled "Fillers Having Vinyl Siloxane Groups Bonded to the Surface Thereof and Copolymers Thereof with Ethylenically Unsaturated Polymerizable Monomers," issued on April 17, 1956, to T. A. TeGrotenhuis on application serial No. 302,415, filed on August 2, 1952.[3] United States Letters Patent No. 2,841,566 (hereafter the '566 patent), entitled "High Polymers with Chemically Bonded Reinforcing and Method of Making Same," issued on July 1, 1958, to T. A.

TeGrotenhuis on an application serial No. 439,463, filed on June 25, 1954.[4]

Both patents relate to improvements in the manufacture of composite articles composed of *in situ*-formed resinous polymers and fibers, fillers, pigments, or other suitable substrates. An olefinic resin-forming liquid, for example, a liquid mixture of styrene and an olefinically unsaturated polyester, is polymerized to the solid state while in contact with the substrate. The selection of a suitable treated substrate, such as fiberglass, used in combination with an *in situ*-formed resinous polymer, will provide a reinforced composite useful, for example, as boat hulls, airplane components, auto and truck bodies, etc.

To form the composite, the substrate is first reacted with a coupling agent which may be the hydrolysis product of a vinyl silane (the '378 patent) or an alkenyl silane such as allyl silane (the '566 patent) to chemically bond siloxane groups of the coupling agent to the substrate by a condensation-type of reaction through one or more silicon-oxygen linkages. An olefinic resin-forming liquid is then polymerized to the solid state in the presence of the treated substrate and a chemical bond is simultaneously formed between the olefinically unsaturated groups attached to the substrate and the olefinic groups in the resin-forming liquid. This latter bonding is by an addition-type of reaction wherein a chemical bond is formed between the vinyl groups attached to the substrate and the unsaturated groups, the carbon-to-carbon double bond groups, of the liquid resin.

It is apparent, both from the disclosure of the patents and from the testi-

---

2. Still another case, *Westwood Chemical, Inc. v. Johns-Manville Fiber Glass, Inc.,* 477 F.2d 1160 (6th Cir. 1973), dealt with the same patents but is not pertinent to the issues presented here. In all, these patents have been asserted, unsuccessfully, against seven defendants, Certain-Teed Products Corp., Union-Carbide Corp., Dow-Corning Corp:, Ferro Corp., Molded Fiber Glass Body Co., Owens-Corning Fiberglas Corp., and Johns-Manville Fiber Glass, Inc.

3. This application was a continuation-in-part of application serial No. 251,157, filed October 12, 1951, and of application serial No. 243,737, filed August 25, 1951, and of application serial No. 585,824, filed March 30, 1945.

4. This application was a division of serial No. 302,415 which issued as the '378 patent and was a continuation-in-part of the same parent applications from which the '378 patent originated.

mony of the patentee, that the essence of the invention is the chemical bonding between a substrate treated with a siloxane coupling agent (either vinyl or allyl) and a liquid such as a polymerizable olefinic monomer by means of an addition-type of reaction. The resulting article thus consists of the resin, the siloxane coupling agent, and the substrate, all chemically bonded together to form a composite article having superior strength and water resistance.

## II.

■ The present action was brought by Westwood Chemical, Inc.,[5] on November 10, 1969, alleging infringement by defendant of claims 1, 3–6, 8–11, and 15–23 of the '378 patent, and claim 8 of the '566 patent.[6]

On July 29, 1970, the District Court for the Northern District of Ohio, per Judge Connell, held both the '378 and the '566 patents invalid under, inter alia, 35 U.S.C. § 102(a), (f), (g), and § 103, and further held that the defendant, Owens-Corning Fiberglas Corporation, did not infringe either of the patents. *Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.,* 317 F.Supp. 201 (N.D.Ohio 1970) (hereafter the OCF case). On appeal, the Sixth Circuit affirmed on the basis of 35 U.S.C. § 103 but only with respect to the particular claims in issue, *i. e.,* claims 1, 3, 4, 6–8, 11, 14–19, 21, 23–26, and 28 of the '378 patent and claim 8 of the '566 patent. *Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.,* 445 F.2d 911 (6th Cir. 1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972) (hereafter the OCF appeal). In so holding, the court expressly restricted its opinion to the obviousness determination, declining to express any view as to the other grounds of invalidity found by Judge Connell. It did express doubt that one

of the patents, Steinman Patent No. 2,563,288, on which the District Court relied, was properly viewed as prior art and accepted, *arguendo,* the contention that another of the patents was not prior art. However, on the basis of the seven other prior art references cited by the District Court, it affirmed the holding of obviousness and expressly rejected plaintiff's contention that it was denied a fair trial.

Relying on the judgment in the OCF case, defendant here moved for partial summary judgment, asserting collateral estoppel under *Blonder-Tongue* as to those claims that were held invalid in OCF. In opposition, plaintiffs asserted they had not received a full and fair opportunity to litigate the issue of validity in the OCF case; that Judge Connell had wholly failed to grasp the technical subject matter; and that the testimony of Owens-Corning's expert, Dr. Rochow, was false in important respects and had misled the court. In an order dated March 12, 1973, this court granted defendant's motion, applying collateral estoppel on the basis of the OCF case. Plaintiffs were thereafter permitted to amend the petition to allege infringement of certain claims of both the '378 and the '566 patents not considered in the OCF case and the suit proceeded with respect to the alleged infringement of claims 5, 10, 12, 13, 20, and 22 of the '378 patent and claims 2, 9 and 11 of the '566 patent.

On October 25, 1973, the District Court for the Northern District of Ohio once again considered the '378 patent. This time, Judge Thomas, in *Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.,* 380 F.Supp. 517 (N.D.Ohio 1973) (hereafter the MFG case), held that, although claims 5, 10, 12, and 13 of the '378 patent had not been litigated in the OCF case, nonetheless the issues

---

**5.** The patents were assigned in August 1971 to Eastwood Chemical, Inc., which was thereafter made a party to this action. It is clear that, to the extent collateral estoppel is applicable, it is applicable also to Eastwood as a successor in interest to the patents. *Lucerne Products, Inc.*

*v. Cutler-Hammer, Inc.,* 175 USPQ 485 (N.D. Ohio 1972).

**6.** The '378 patent contains a total of 28 claims while 14 claims appear in the '566 patent.

presented by those claims were the same as those litigated in OCF, that plaintiff had a full and fair opportunity to litigate those issues in the OCF case, and that collateral estoppel prevented plaintiffs from further asserting those claims.

On April 11, 1974, defendant filed its second motion for partial summary judgment, requesting the court to rule that, by reason of the MFG decision, plaintiffs were collaterally estopped from asserting against defendant the validity of claims 5, 10, 12, and 13 of the '378 patent.

On June 27, 1974, the Sixth Circuit affirmed the decision of the District Court. *Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.*, 498 F.2d 1115 (1974).

By an order dated November 21, 1974, the parties here were advised that a hearing would be held to determine, *inter alia*, "how the claims that have not been adjudicated on their merits in conformity with the requirements of *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), present issues any different in substance from the issues presented by the claims adjudicated in the *Owens-Corning* case." The hearing was held on January 23 and 24, 1975, at which time both parties put on testimony, introduced exhibits, and presented arguments.

In March 1975, in yet another suit in the Northern District of Ohio involving both the '378 and '566 patents, Judge Thomas summarily declared all claims of both the '378 and '566 patents to be invalid. *PPG Industries, Inc. v. Westwood Chemical, Inc.*, Civil Action No. C–71–49 (N.D.Ohio 1975) (unreported).[7] In what appears to be the only reference to the issue of validity in the memorandum and order, the court states:

> In *Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.*, 380 F.Supp. 517 (N.D.Ohio 1973), 181 U.S.P.Q. [134], *aff'd*, 498 F.2d 1115 (6th Cir. 1974), this court determined that there was an identity of questions between

the '378 patent claims adjudicated in *Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp., supra*, and the '378 patent claims in the *Molded Fiber Glass Body* case, unadjudicated in the *Owens-Corning Fiberglas* case; and that "the affirmative defense of collateral estoppel [under *Blonder-Tongue, supra*] is justified and will be applied." For the same reasons the doctrine of collateral estoppel applies to the instant case; and a declaration of invalidity of all claims of '378 and '566 will be entered here.

On April 15, 1975, defendant filed its third motion for summary judgment, requesting a ruling, on the basis of *Blonder-Tongue* and *PPG Industries, Inc., supra* (hereafter the PPG case), that plaintiffs are collaterally estopped from asserting the validity of all of the remaining claims in issue, specifically claims 5, 10, 12, 13, 20, and 22 of the '378 patent and claims 2, 9, and 11 of the '566 patent.

### III.

With this background, the initial question presented is plaintiffs' contention that collateral estoppel does not apply at all to nonlitigated claims, that the MFG and PPG cases were erroneous as a matter of law in applying the estoppel in that manner, and that this court should neither apply estoppel based on either of those two decisions nor take the same approach as those cases. Plaintiffs' view is supported by some precedent, *Bourns, Inc. v. Allen-Bradley Co.*, 480 F.2d 123 (7th Cir. 1973), *cert denied*, 414 U.S. 1094, 94 S.Ct. 726, 38 L.Ed.2d 551, but is contrary to the view adopted by the Sixth Circuit in the MFG appeal. In large part, plaintiffs' argument stems from the principle, well established in the patent law, that each claim of a patent is to be considered as setting forth a complete and independent invention. 4 WALKER *Patents* § 263 (Deller's 2d ed. 1965). See, also, 35 U.S.C. §§ 253, 288. Indeed, those familiar with patent prac-

---

**7.** Plaintiffs indicate they have appealed that decision.

tice are aware that the patent attorney almost always presents to the Patent Office a set of claims, each differing in scope, one from the other,. and usually running from the broadest permissible definition of the invention to a very specific definition of the invention. Out of such a set of claims, it would not be unusual for a broad claim to be found to be invalid but the more specific claim to be held valid. *See, e. g., Southwest Industrial Products, Inc. v. Ezee Stone Cutter Manufacturing Co.*, 157 F.Supp. 208 (W.D.Ark.1957), *aff'd*, 262 F.2d 183 (8th Cir. 1958). Yet, it is also frequently the case that one claim in a patent may vary only slightly from another claim and that the issues of validity presented by the two claims are not significantly different. Indeed, in the OCF case, Westwood stipulated that the validity of a number of claims could be determined on the basis of certain representative claims. Hence, a rule that would limit the application of an estoppel only to specific claims seems to be much too mechanical and ignores the practicalities of patent practice. Moreover, it could well lend itself to abuse. For example, a patentee could readily circumvent the estoppel simply by litigating the patent one claim at a time, thus preserving to himself additional days in court against other defendants, even if, in his first suit, the particular claim litigated had been

held invalid. Such a piecemeal approach to patent litigation is clearly contrary to the philosophy and goals sought to be achieved by *Blonder-Tongue*.

■ The correct approach, and the one adopted in this opinion, is believed to be that stated in *Carter-Wallace, Inc. v. United States*, 496 F.2d 535, 204 Ct.Cl. 341 (1974), where it was held that, in determining the applicability of the estoppel, the first consideration is "whether the issue of invalidity common to each action is substantially identical." It is the issues litigated, not the specific claims around which the issues were framed, that is determinative. Only by focusing on the issues, and examining the substance of those issues, can the second court ascertain whether the patentee had the requisite full and fair chance to litigate the validity of his patent in the first suit. By the same token, only by using this approach can an attempt to relitigate the prior decision be revealed.

■ Having concluded that collateral estoppel may apply to nonlitigated claims,[8] the next issue is defendant's contention that the estoppel should be applied on the basis of the MFG and PPG cases. Except to express reservations about relying on one court's estoppel determination as the basis for a subsequent application of the estoppel,[9] that ques-

8. However, in all but the simplest case of a subsequent suit involving identical claims, any potential savings in time, both for the parties and the court, can be easily consumed, as in this case, by the motions, hearings, and briefs needed to evaluate and compare the issues raised by the claims. Naturally, if the estoppel is ultimately determined to be inapplicable to the unlitigated claims, the parties must proceed to trial and the total experience is a proceeding far lengthier than even the normally protracted patent case. This is not to say that in a case such as this, with multiple patents having both adjudicated and nonadjudicated claims, that an inquiry into the applicability of collateral estoppel, including a limited hearing for ascertaining the facts and avoiding duplicitous litigation, should not be held. There is a danger, however, where nonlitigated claims in a relatively complex technology are involved, that inquiry into the estoppel may just as easi-

ly perpetuate protracted litigation as eliminate it and it may well be as convenient to address the issues of validity on their merits.

9. Defendant has cited no case in which an estoppel determination by one court has been relied upon as the basis for imposing an estoppel in another court. It would appear from the *Technograph* cases that each court in which the estoppel is asserted should satisfy itself that the estoppel is properly applied. *See, Technograph Printed Circuits, Ltd. v. Martin-Marietta Corp.*, 340 F.Supp. 423 (D.Md. 1972), *aff'd*, 474 F.2d 798 (4th Cir. 1973), *cert. denied*, 414 U.S. 880, 94 S.Ct. 68, 38 L.Ed.2d 125; *Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 174 USPQ 297 (N.D. Ill.1972), *aff'd*, 484 F.2d 905 (7th Cir. 1973); *Technograph Printed Circuits, Ltd. v. United States*, 202 Ct.Cl. 867, 484 F.2d 1383 (1973). Such an approach is in keeping with the Supreme Court's observation in *Blonder-Tongue*

tion need not be answered. The MFG case did not purport to deal with all of the claims here in issue so recourse must be made to the OCF case at least as to certain of the claims in any event.[10] There is little savings in time to be had by looking to the MFG case for some of the claims, evaluating the opportunity to litigate, etc., in that case and then, as to other claims, look to the OCF case and make the same kinds of determinations. Since the OCF case is the only one in which the issues of nonobviousness were explored and decided on their merits, and since the MFG case is premised on the OCF case, it is most expeditious, as well as appropriate, to evaluate the issues of estoppel on the basis of that decision alone.[11]

## IV.

Looking then to the OCF case, the initial questions presented are whether in that case plaintiffs had a full and fair opportunity to litigate the issue of patent validity and whether the prior courts wholly failed to understand the technical subject matter. In effect, this court, by granting defendant's first motion for summary judgment, has already passed upon those questions. However, subsequent to that ruling, and at the hearing held in this case, defendant conceded that findings 94 through 100 in the OCF case were in error, and Judge Thomas, in the MFG case, reached the same conclusion. Those findings, which were in large part based upon the testimony of one of the principal expert witnesses for

Owens-Corning, Dr. Eugene G. Rochow, professor of chemistry, Harvard University, related to two prior art Johannson patents on which both the District Court and the Court of Appeals placed substantial reliance in invalidating the claims at issue.[12] Judge Thomas found Dr. Rochow's testimony to be "clearly mistaken or at least misleading," a conclusion well supported by the record.

Another development, which arose as a result of the hearing held in this case, relates to the testimony of defendant's expert, Dr. Maurice Jellinek, who testified with respect to the Steinman Patent No. 2,513,268, pertaining to the allyl silicates. It was conceded by Dr. Jellinek that the allyl silicates, when exposed to a moist or humid environment hydrolyze at the silicon-oxygen bond of the allyl radical to form allyl alcohol and silicic acid. Thus, the bond is *destroyed* and the resin and substrate *separate*. In light of that testimony, the conclusion in Judge Connell's finding 104 that the allyl silicates "are structurally similar and function in the same manner as the allyl silanes and vinyl silanes" is misleading, if not incorrect. While the silicates initially couple by means of the same mechanism as the silanes, and while both will function in accordance with the "double fishhook" theory of Steinman, the bond formed by the silicates is destroyed when exposed to normal environmental conditions. In other words, the difference between Steinman's silicates and the silanes claimed here is that the former is of no practical value while the latter is

that application of the estoppel is not an automatic matter and that the ultimate test of whether the estoppel is to be applied necessarily rests "on the trial courts' sense of justice and equity." 402 U.S. at 334, 91 S.Ct. at 1445.

10. While the PPG decision purported to invalidate all of the claims, it expressly relied on the MFG case as its only authority for doing so. The '566 patent was not even considered in the MFG case so the basis for holding it invalid on the authority of that case is not at all clear. The same problem exists with respect to the claims that were not considered in MFG.

11. The principle of comity, of course, dictates that the MFG decision is to be accorded the

deference paid to the judgments of other coordinate tribunals, Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 488–89, 20 S.Ct. 708, 44 L.Ed. 856 (1900), and is entitled to substantial weight on all common questions. See, e. g., King-Seeley Thermos Co. v. Millersville Mfg. Co., 296 F.Supp. 247 (M.D.Tenn.1968), aff'd, 412 F.2d 318 (6th Cir. 1969).

12. When properly construed, the two Johannson patents are clearly of little import to the issues of validity in the OCF case and further reduces the number of pertinent prior art patents from the original nine relied upon by Judge Connell in his opinion down to five.

highly useful. The Sixth Circuit relied on finding 104 in affirming the trial court's holding of obviousness, citing the Steinman patent as the "most revealing" of the prior art teachings not considered by the Patent Office. Yet, nowhere in either Judge Connell's opinion or that of the Sixth Circuit is there any recognition of the fundamental difference in result achieved by these two similar materials.[13]

It is to be emphasized that the errors in findings 94–100 and the questionable validity of finding 104 have been established, not by reason of "unbridled excursions into the record of the earlier trial," *Kaiser Industries Corp. v. Jones & Laughlin Steel Corp.*, 515 F.2d 964, 987, 185 USPQ 343, 361 (3d Cir. 1975), but rather, they appear on the basis of defendant's concessions and presentation in this case. Since these matters relate to technical facts upon which the OCF court clearly relied in its holding of obviousness, it draws into question whether the order granting defendant's first motion for summary judgment should be reconsidered.

■■■■ After considering the matter at some length, and having in mind the guidelines and objectives set out in *Blonder-Tongue*, it has been concluded that, these errors notwithstanding, they do not rise to the level of demonstrating that either Judge Connell or the Sixth Circuit wholly failed to grasp the technical subject matter and issues in suit.[14]

Understanding the technical subject matter necessarily involves at least two aspects, the first being the technology of the patent in suit and the second being the technology of the prior art. While a correct understanding of both aspects is necessary to a proper resolution of the obviousness issue, the demonstrated failure of a court properly to assess the technical implications of some *part* of the prior art simply will not support the conclusion that the court *wholly* failed to grasp the technical subject matter in issue. That is the situation here. There is no doubt that the OCF court understood the technical subject matter of the patents in suit; nor is there any doubt it had a correct understanding of such prior art patents as those to Kropa,[15] Hyde, and Biefeld. To the extent it may have misunderstood the scope of the Steinman teachings and, to the extent that it was misled regarding the teaching of the Johannson patents, those were matters properly for consideration on appeal. This court cannot, and will not, presume to act as an appellate forum to correct errors which could have been raised on appeal. Even if it is shown that those errors were in fact asserted on appeal and that the appellate court failed to recognize the validity of the patentee's contentions, that will not be enough to avoid application of the estoppel unless it is also shown that the reviewing court *wholly* failed to grasp the technical subject matter and issues. Plaintiffs have not been able to make that showing here. In the absence of establishing that

13. Of the four remaining prior art patents relied upon in the OCF case, one was a file wrapper reference and the other three, although not specifically cited by the Patent Office, are merely duplicative of some that were.

14. Since those errors do not bear on the issue of whether plaintiffs had a full and fair opportunity, evidentially and procedurally, to litigate in the OCF case, there is no need for the court to reconsider its earlier determination, implicit in its order of March 12, 1973, that plaintiffs did have such an opportunity.

15. Plaintiffs do urge that error was made in the OCF courts with respect to Kropa Patent No. 2,465,731. It is argued that the courts failed to ascertain the difference between the

reaction occurring in the claimed invention, wherein the silane is applied to the substrate and the resin thereafter applied to the treated substrate, and that occurring in Kropa where an allylchlorosilane, e. g., allyl trichloro silane, is copolymerized with unsaturated resins such as those disclosed in the '378 and '566 patents. This resultant mass is then applied as a coating or varnish to a fibrous glass substrate. The result is a coating which adheres tenaciously to glass. Having reviewed the opinions of the OCF trial and appeal courts, as well as the evidence adduced at the separate hearing in this case and the arguments of counsel, it is concluded that there is no showing sufficient to establish that the OCF courts misinterpreted the teachings of this reference.

fundamental feature of a successful defense to an estoppel assertion, plaintiffs can only complain that the prior decisions were erroneous. As it has been observed by other courts, the correctness of the earlier decision is not an issue and is not a prerequisite to the application of the estoppel. *Kaiser Industries, supra; University of Illinois Foundation v. Blonder-Tongue Laboratories, Inc.*, 334 F. Supp. 47, 50 (N.D.Ill.1971), *aff'd*, 465 F.2d 380 (7th Cir. 1972), *cert. denied*, 409 U.S. 1061, 93 S.Ct. 559, 34 L.Ed.2d 513.

## V.

■ There remains the question, then, of whether the issues of validity presented by unadjudicated claims 5, 10, 12, 13, 20, and 22 of the '378 patent and claims 2, 9, and 11 of the '566 patent are substantially identical to the issues of validity decided by the OCF court. In approaching that question, it should be noted that, while it is convenient to refer to the "issue of patent validity," that can be misleading. Where obviousness is the basis for the prior invalidity holding, an inquiry into the identity of the validity issue is more properly phrased in terms of the factual inquiries mandated by *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), as a prerequisite to such a validity determination. Thus, the inquiry should be whether the nonlitigated claims present new issues as to the art pertinent to the nonlitigated claims; as to the scope and content of that art; as to the differences between the prior art and the nonlitigated claims; and as to the level of ordinary skill in that art. If none of these inquiries raises any new triable issues, then the obviousness determination in the prior proceeding should be equally applicable to the nonlitigated claims.

Perhaps the most convenient way to approach a determination of these issues is, as Judge Thomas did in the MFG case, to compare the litigated and nonlitigated claims. If they are of identical scope, it readily follows that no new issues bearing on the obviousness determination are presented. On the other hand, such a comparison may reveal some differences of a substantive nature. In that event, it will be necessary to go a step further and determine whether those differences are of a kind that would have been itemized in a *Graham* analysis as a difference between the claim and the prior art, or whether it was known in the prior art and is only a part of the claimed combination as a whole that provides the context in which the obviousness determination is made. If it is only of the latter character, *i. e.*, it is known in the prior art and does not alter the issue as to the differences between the claimed subject matter and the prior art, it is still necessary to assess the importance of the difference to the combination as a whole since it is from that standpoint that the obviousness determination must be made. *Jacobson Brothers, Inc. v. United States*, 512 F.2d 1065, 206 Ct.Cl. 518 (1975); *B. G. Corp. v. Walter Kidde & Co.*, 79 F.2d 20, 22 (2d Cir. 1935).

Here, neither party urges any new or different issue as to the pertinent prior art, the scope and content of that art, or the level of skill in that art. The dispute here is whether the differences between the prior art and the nonlitigated claims are distinguishable from the differences between the prior art and the previously litigated claims. Plaintiffs contend that the differences presented by the nonlitigated claims are distinguishable substantially from those differences previously held to be obvious, while defendant urges the contrary. In particular, defendant contends that the substantial identity of the validity issues is apparent from matching up the claims in the following manner:

| Unadjudicated Claim | Adjudicated Claim |
|---|---|
| 5 | 15 |
| 10 | 11 |
| 12 | 3 |
| 13 | 7 |
| 20 | 19 |
| 22 | 21 |
| 2 | 8 |
| 9 | 8 |
| 11 | 8 |

Turning first to a comparison of claims 5 and 15, the parties are agreed that the sole distinction between these two claims is that claim 5 describes the olefinic polymerizable liquid as having "groups which react with olefine groups" while the olefinic liquid in claim 15 is not so limited. Plaintiffs assert that claim 15 literally reads upon the use of olefinic polymerizable liquids that have either nonreactive or stearically hindered olefine groups and, hence, can polymerize only by condensation and are therefore inoperative to produce a chemical bond. Claim 5, plaintiffs argue, thus is narrower than claim 15 and includes only olefinic polymerizable liquids that are operative to produce a chemical bond.

Such a strained and unreasonable interpretation of the adjudicated claim cannot be accepted. Although it is true that there are olefinically unsaturated monomers that polymerize solely by condensation polymerization and cannot, due to the stearic hindrance, polymerize by the addition mechanism, it is not reasonable to assume that Judge Connell was reading the claim in that manner when he held it invalid. The only normal and reasonable meaning of the phrase "olefinic polymerizable liquid," as it is used in the context of the claim, is that the liquid has groups which react with olefine groups and is a liquid monomer which polymerizes by *addition* polymerization. There is nothing to indicate that the claim draftsman would have described the liquid by *non*reactive terms and plaintiffs' expert witness (and patent counsel) admitted as much at the hearing.

Any doubt about the intent of the patentee in drafting the claims is resolved by the specification of the '378 patent where it is stated, in column 4, lines 29–40, that:

> In accordance with the present invention, the fabric which has been treated as above is contacted or immersed in a composition comprising a polymerizable olefinic compound and preferably a polymerizable mono-olefinic compound of less than 6 aliphatic carbon atoms and capable of polymerizing by free radical initiators such as a peroxide and hydroperoxide catalyst, and the polymerizable olefinic compound is subjected to catalyst and caused to polymerize and cause to set to the solid state while in contact with the treated fabric *whereby interaction of double bonds on fabric and monomer occur to build the fabric chemically into the solid molecule.* (Emphasis added.)

From this it is apparent that the disclosed polymerization technique is addition, *i. e.*, reaction of the olefinic or double bonds, and there is no dispute that addition polymerization requires that the olefinic polymerizable liquid have olefinic groups which react with the olefinic groups of the coupling agent. The remainder of the specification, without exception, is drawn to addition polymerization mechanisms and never mentions or infers either condensation polymerization or an olefinic polymerizable liquid not capable of addition polymerization.[16]

Hence, the expression "olefinic polymerizable liquid" appearing in claim 15 is properly understood to mean an olefinic polymerizable liquid capable of reacting with vinyl siloxane, *i. e.*, "having groups which react with olefine groups." As so interpreted, claims 5 and 15 present identical issues and collateral estoppel should extend to both claims.

With respect to adjudicated claim 11 and unadjudicated claim 10, there are essentially three differences between them. The first difference is as to the substrate specified, claim 11 reciting "fibers and inorganic pulverulent solids" while claims 10 recites "fibers and inorganic pulverulent pigments." This dif-

---

**16.** It is, of course, appropriate to look to the specification, to understand the meaning of a claim. *Autogiro Co. of America v. United States*, 384 F.2d 391, 396, 181 Ct.Cl. 55, 61 (1967).

ference is clearly without substance as shown, for example, from column 8, lines 17–20, of the specification wherein it is stated that "[t]he term 'pigments' is used herein and in the appended claims in the generic sense * * * to include powders, fillers, and pulverulent inorganic solids generally * * *."

The second difference on which plaintiffs rely is the recitation in claim 10 of a "free radical catalyzed monomeric polymerizable liquid olefine" Claim 11 does not specify the monomer as being "free radical catalyzed." However, as discussed with respect to claim 15, it is clear that the expression "liquid polymerizable olefinic monomer" is intended to mean a monomer capable of reacting by addition polymerization with the olefinic bond of the coupling agent. Thus, claims 10 and 11 are both directed to addition polymerization, but claim 10 is limited to free radical addition polymerization while claim 11 is open to additional techniques, such as addition by the Friedal-Crafts catalyst method.

It is a notoriously old technique to use a catalyst as a reaction accelerator. The Kropa patent, for example, suggests a free radical catalyst in the same overall combination of materials as claims 10 and 11. Indeed, the lack of significance in the particular catalyst used is recognized in the '378 patent, at column 7, lines 68–75.

The third difference is that claim 10 specifies a monomer having two sets of double bonds while the number of double bonds of the monomer is not specified in claim 11. It is clear from the specification (col. 8, lines 1–4) that the number of double bonds is not significant, the patentee's invention residing in the chemical bond between the monomer and the coupling agent, not in the number of double bonds possessed by that monomer. Further, the use of a monomer having two sets of double bonds is expressly disclosed in Kropa.

In sum, plaintiffs have pointed out some differences between claims 10 and 11 but those differences do not distinguish the claim from the prior art.

Since claims 10 and 11 present the same differences from the prior art, there is no substantive reason for relitigating the issue of obviousness of those differences, albeit in the context of the slightly different combination of claim 10, and the estoppel should apply to claim 10.

Adjudicated claims 3 and 7 and unadjudicated claims 12 and 13 of the '378 patent may be considered together since the only apparent difference resides in the substrate. Claims 3 and 7 describe the substrate as a member selected from "fibers and inorganic pulverulent solids" while the unadjudicated claims describe it as "an inorganic pigment." As discussed with respect to claims 10 and 11, the term "pigments" as defined by the patentee is intended to be generic to "inorganic pulverulent solids." On the basis of the record before the court, there can be no doubt that the issue of obviousness of the patentee's chemical-bond concept is the same whether the substrate is described as fibrous, inorganic pulverulent solids, or inorganic pigments. Accordingly, no substantively different issue is presented by claims 12 and 13 which would justify a further trial.

Turning to claim 20, it was established at the hearing that the sole distinction between that claim and claim 19 is that claim 20 specifies chlorvinyl groups bonded to the surface of the fibers through a silicon-oxygen linkage while adjudicated claim 19 calls for vinyl groups. The term "vinyl" is used in claim 19 broadly to refer to both substituted and unsubstituted monovalent olefinically unsaturated hydrocarbon radicals having two carbon atoms as, for example, a vinyl silane. Thus, claim 20, in specifying chlorvinyl groups, such as a chlorvinyl silane, as the coupling agent might be viewed as being of narrower scope than claim 19.

Plaintiffs assert:

No prior art has ever been cited disclosing "chlorvinyl groups" for application to any substrate.

The record is to the contrary. For example, Hyde Patent No. 2,390,370 discloses the use of "hydrolyzable organosil-

icanes, their hydrolysis products and their polymerized hydrolysis products" in coating glass fibrous substrates. This generic grouping is disclosed as including derivatives of $SiH_4$ which contain readily hydrolyzable organic radicals joined to the silicon atom through carbon atoms. Suitably disclosed organic radicals include the alkenyl radical (vinyl, allyl, etc.) which may contain halogen substituents (chlorine, bromine, etc.). Hence, a chlorvinyl silane would be included in the Hyde disclosure.

Moreover, plaintiffs' expert witness (and patent counsel) admitted at the hearing that there is essentially no difference in function or result achieved with the chlorvinyl as compared to the vinyl. The '378 patent specification confirms this admission by listing the chlorvinyl species among other species which fall within the generic vinyl grouping as suitable for use in the invention. There is no indication in this specification that the chlorvinyl performs any better or any worse than other suitable species. Defendant's expert witness also testified that chlorvinyl silane coupling agents perform in an essentially equivalent manner to accomplish substantially the same results as other types of vinyl silane coupling agents.

In view of the foregoing, it is concluded that the recitation in claim 20 of a chlorvinyl silane coupling agent does not alter the issues decided adversely to plaintiffs in the adjudication of claim 19 in the OCF case.

With respect to unadjudicated claim 22, the sole difference between it and adjudicated claim 21 is in the recitation of a "vinyl silicon trihalide" as the coupling agent in claim 22. Claim 21 describes the coupling agent as a "vinyl silicon halide" and is sufficiently broad to include the mono-, di-, and trihalides.

It was established at the hearing by the testimony of defendant's own expert witness that there are in fact actual significant differences in the preparation of composite articles using vinyl silicon halide coupling agents generally, as opposed to those using vinyl silicon trihalide cou-

pling agents. It appears that, as the halides are replaced by organic groups, the performance of the material decreases. One form of a trihalide, the trichlorosilane, has been found to be the cheapest and easiest coupling agent to prepare and use, and it provides a superior bond between the substrate and the resin.

When vinyl trichlorosilane is applied to a substrate in an aqueous medium, which is conventional, hydrochloric acid readily forms and the three silicon valences formerly bonded to the chlorine readily pick up hydroxy groups, which in turn chemically react with the substrate to form silicon-oxygen linkages with the substrate. On the other hand, when using a monohalide or dihalide as the coupling agent, the presence of organic radicals on the remaining silicon valences, so-called "blocking groups," inhibits chemical bonding of the three potential silicon linkages to the substrate and thus provides a product of decreased strength.

■ Plaintiffs urge that the improved performance of the trihalide coupling agent raises separate and distinct questions with regard to claim 22 and that the first element of *Blonder-Tongue,* identity of issues, is thus absent as to this claim.

Plaintiffs' arguments cannot be accepted for a number of reasons. In the first place, the Kropa patent expressly teaches the use of silicon trihalides, and chlorosilane specifically, as a coupling agent for achieving a tenacious adherence to a glass substrate. Thus, in terms of a *Graham* analysis of claim 22, the recitation of a silicon trihalide as a coupling agent is not something that would have been identified as a difference from the prior art. Further, the arguments and evidence as to the commercial success of the trichlorosilane are not particularly pertinent to the claimed process. Claim 22 calls for contacting the fibers with the trihalide while, in commercial practice, the vinyl trichlorosilane is converted to vinyl trialkoxy silane to prevent deterioration of the glass by the HCl and then applied to the fibers. Thus, the commercial practice on

which the claim of success is predicated is something different from the claimed process and, hence, of little significance *Jacobson Brothers, Inc. v. United States, supra.* Finally, there is nothing in the specification indicating that the trichloro species possesses any advantages over other trihalides or, indeed, over vinyl silicon halides generally. Advantages, not set forth in the specification, are of little weight in assessing the validity of an invention. *Graham, supra,* at 25; *Pacific International Plastics v. Sterling Plastics Corp.,* 305 F.Supp. 1341 (C.D.Cal.1969); *In re Stewart,* 222 F.2d 747 (CCPA 1955).

In sum, the differences between the prior art and claims 21 and 22 are the same so no new issue is presented by claim 22 in that respect. While the specific recitation of a trihalide does define a slightly different overall combination of elements to be considered in the obviousness determination, the secondary considerations urged by plaintiffs as bearing on that combination do not provide an adequate basis for relitigating that determination.

Turning now to the '566 patent and unadjudicated claims 2, 9, and 11, the first difference between these claims and previously adjudicated claim 8 is as to the particular substrate recited. There is nothing in either the patent or plaintiffs' presentation on which to conclude that the particular substrate raises any new or different issues. Accordingly, as noted previously, these "differences" are insufficient to defeat application of the estoppel.

The second difference in the claims resides in the recited coupling agent. Adjudicated claim 8 describes it as:

> * * * an olefinically unsaturated organosiloxane group in which carbon-to-carbon double bonds are spaced by at least one carbon atom from the silicon atom carrying the organic group of said organosiloxane group, said ole-

finically unsaturated group being an alkylenyl group having not over twenty carbon atoms.

As described, this would include the alkenyl groups ranging from allyl up to and inclusive of those having 20 carbon atoms. Claims 2 and 11 recite an allyl siloxane group and claim 9 recites an allyl or substituted allyl siloxane group. Thus, claim 8 is generic while claims 2, 9, and 11 are specific to allyl.

The use of alkenyl silanes, including the allyl species, for treating substrates was well known in the prior art. See, for example, Biefeld Patent No. 2,392,-805 and Hyde Patent No. 2,390,370. Indeed, it appears from the OCF opinion that it was the disclosure of the allyl species in these prior art patents that was the basis on which generic claim 8 was invalidated. The genus having been held invalid on the basis of the teaching of the species in the prior art, it follows that a claim to the species can raise no new issues.

The final distinction is that claims 8 and 2 are method claims while claims 9 and 11 are product claims. While processes and products are separate categories of invention, 35 U.S.C. § 101, nevertheless, it is not inconsistent to state that a process and product may present identical issues concerning, *e. g.,* their obviousness. *Cf., In re Conover,* 304 F.2d 680, 49 CCPA 1205 (1962). Thus, this distinction, without more, is of no merit and does not defeat application of the estoppel.

## VI.

The foregoing analysis has been considerably more thorough than is normally to be expected when issues of collateral estoppel are raised. In part, this is the necessary result of the conclusion that collateral estoppel may extend to nonlitigated claims. Moreover, in light of the errors in the OCF case that have now been revealed,[17] it was felt that jus-

---

17. The rather unusual posture assumed by the Department of Justice in vigorously opposing any suggestion of error in the OCF case when plaintiffs first asserted it, and then *conceding* the error in these proceedings, has also contributed to the decision to review the matter thoroughly.

tice and equity required nothing less. The presence of those errors has made the question of whether to extend application of the collateral estoppel to unadjudicated claims a most difficult one. In a sense, to do so is to perpetuate and enlarge the error, something that neither justice nor equity will support. On the other hand, a complete review of the prior proceedings and the evidence now before the court reveals two fundamental facts. The patentee's invention, his contribution to the art, in both the '378 and '566 patents, was, in fact, squarely placed in issue and litigated in the OCF case, both at trial and on appeal. Further, such minor differences as exist between the litigated claims and those here in issue are so insubstantial that the issues of validity under *Graham v. John Deere,* must be considered to be the same. In those circumstances, it is apparent that any further proceedings in this court would simply be a relitigation of the obviousness determination in the OCF case. The rule in *Blonder-Tongue* was expressly intended to avoid just such a result.

Finally, it is worthy of note that plaintiffs' arguments regarding the opportunity to litigate in the OCF case and whether Judge Connell understood the technical issues were presented to the Sixth Circuit in the OCF appeal, to Judge Thomas in the MFG case, again to the Sixth Circuit in the MFG appeal, to this court in opposition to the first motion for summary judgment, and now, once again, in opposition to the present motions. It is also worth mentioning that the OCF case was in a forum and against a defendant selected by plaintiffs. It is believed that, in light of these facts, it is not unjust, inequitable, or in any way unfair to conclude that plaintiffs have had their day in court and that litigation on these patents should now come to an end.

Based on the foregoing, it is concluded that the estoppel arising from the OCF case should extend to all of the claims here in issue, thereby foreclosing any recovery by plaintiffs in this case.

## CONCLUSION OF LAW

Upon the foregoing opinion, which is made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover and the petition is dismissed.